STATE of Missouri, Respondent,

v.

Fred Paul STEHLIN, Appellant.

No. 46242.

Supreme Court of Missouri,

Division No. 1.

May 12, 1958.

---

No brief filed for appellant.

John M. Dalton, Atty. Gen., Richard W. Dahms, Asst. Atty. Gen., for respondent.

HYDE, Judge.

■ Defendant was convicted of forcible rape and sentenced to seven years imprisonment in the penitentiary. Defendant has appealed but has filed no brief, so we consider the assignments of error properly made in his motion for new trial. State v. Campbell, Mo.Sup., 262 S.W.2d 5; State v. Thomas, Mo.Sup., 309 S.W.2d 607. Defendant's assignments (1, 2 and 15) require determination of whether there was sufficient evidence to support the verdict on his claim that he was entitled to a directed verdict.

■ "In determining the sufficiency of the evidence to sustain a conviction, we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom; and evidence to the contrary is rejected. State v. Sheard, Mo.Sup., 276 S.W.2d 196, 200 and cases cited." State v. Henderson, Mo. Sup., 301 S.W.2d 813, 817; State v. Thomas, 309 S.W.2d 607, 609. Prosecutrix testified that while she was waiting for a streetcar about 10:20 P.M. on the northeast corner of Jefferson and Park Streets, in the City of St. Louis, a dark gray Buick automobile approached the intersection from the east on Park Street and stopped for the stop sign on the northeast corner of the intersection. There were two men in the car and one of them, later identified by prosecutrix as the defendant, got out of the car on the passenger's side and asked her where she was going and if she wanted to go with him. When she refused to go, the defendant told her he had a gun, stuck something in her ribs and forced her to get into the car. She got in the front seat of the car and sat in the middle of the seat between the two men. After they had driven a couple of blocks, the defendant told her to get over in the back seat. Upon her refusal, he reminded her that he had a gun so she climbed over the back of the front seat into the back seat and the defendant followed her into the back seat. Upon getting in the back seat, the defendant threw prosecutrix down in the seat and whereupon she started struggling with him and begging him to take her home. The defendant refused to take her home and began to choke her to force her to lie down in the seat. Defendant said "I'll choke you to death if you don't lie down.". The defendant then partially disrobed prosecutrix, opened his pants, took out his penis, which she saw, inserted it into her private parts and had an act of intercourse with her. She was thereafter assaulted by defendant's companion who committed an act of sodomy on her.

■ Prosecutrix positively identified defendant, as the man who had sexual intercourse with her, both at the police station three days later and at the trial. She also identified defendant's companion and identified the automobile, in which defendant and his companion were arrested, as the one into which she was forced to go by defendant. She said she got a real good look at defendant's face ("could see his face real plain") both at the street corner when she was seized, where it was light, and in the car from the light of street lights. After being let out of the car, prosecutrix was taken to the home of her sister and brother-in-law by a passing motorist. They testified to her condition, finger print marks on her throat, mouth swollen, clothing and hair "disrumpled." The police were called and, after questioning, prosecutrix was taken to the City Hospital, examined and definite signs of intercourse found. Defendant offered no evidence. It is obvious that there was substantial evidence to support the verdict and we hold that defendant was not entitled to a directed verdict.

■ Defendant's motion makes assignments (3 and 4) that the verdict is excessive and the result of bias and prejudice. The verdict is within the limits fixed by Sec. 559.260 RSMo V.A.M.S. and far below the maximum. These assignments are without merit and are overruled. State v. Hagerman, Mo.Sup., 244 S.W.2d 49; State v. Copeland, 335 Mo. 140, 71 S.W.2d 746 and cases cited. Defendant's assignments 5, 6, 7 and 8 are too general and preserve nothing for review. (Injecting prejudicial material in the opening statement, admitting incompetent evidence, giving all instructions, and limiting cross-examination.) These assignments did not set forth in detail and with particularity the matter concerning which complaint was intended to be made as required by Rule 27.20, 42 V.A.M.S., and did not, in fact, refer to any specific matters at all. See State v. Thomas, Mo.Sup., 309 S.W.2d 607, 610; State v. Gaddy, Mo.Sup., 261 S.W.2d 65,

68, and cases cited. This is also true of assignment 18 alleging error in giving instructions 4 and 5 "for the reason that they are repetitious and unduly point the jurors' attention to matters that will bias and prejudice them", because there is no reference to any specific matters.

■ Defendant's assignments 9 and 10 concerned statements made by Assistant Circuit Attorney in his opening statement, the first concerned the age and family of prosecutrix. Defendant's objection was sustained and the jury instructed that these matters were immaterial and irrelevant and told to disregard them. Thus the action requested by defendant was taken by the trial court. See State v. Stroud, 362 Mo. 124, 240 S.W.2d 111; State v. Armstead, Mo.Sup., 283 S.W.2d 577. Defendant did thereafter request a mistrial but has made no assignment for refusing it, so that question is not before us. The second statement was that clothing taken by the police from the home of defendant would be produced. No proper specific objection was made (only that "it is improper argument") and no motion to suppress had been made. Later the court permitted a motion to suppress to be made out of time and after a hearing, sustained it. The clothing was not shown to the jury and no further reference to it was made. We hold there was no prejudicial error in the rulings on the opening statement and these assignments are overruled.

■ Assignment 11 concerned the statement of a witness (the woman prosecutrix had visited in the evening before going to the street corner to wait for the bus) that prosecutrix "was always a very nice person, very intelligent." Defendant's objection was sustained and the jury told to disregard that part of the answer, thus taking the only action requested, so this assignment is without merit. Assignment 12 was that the court erred in refusing a mistrial when prosecutrix began crying while on the witness stand. The court took a temporary recess and had the record

show there was only "a slowing down of her voice and sobbing", but no crying aloud. The action required was a matter within the discretion of the trial court and there is nothing in the record to show abuse of discretion. See State v. Baker, Mo.Sup., 293 S.W.2d 900, 902 and cases cited. Assignments 13 and 14 concern testimony of prosecutrix as to acts of defendant's companion in the automobile and her identification of him at the police station. As to the first, there was no objection made at the time, but after prosecutrix had stated what this man did, there was an objection to a statement prosecutrix made to the police about his identity, as hearsay, and also to the form of a later question, both of which are sustained. Thus, there is nothing here for review as to this testimony. See State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877; State v. Thompson, 338 Mo. 897, 92 S.W.2d 892; State v. Tillett, Mo.Sup., 233 S.W.2d 690. As to the identification at the police station, objection was sustained to the part of the statement of prosecutrix to the effect that the two detectives who came to her house after the attack "are the ones who picked these two fellows up." The jury was told to disregard that portion of her answer and no further action was requested. Therefore, these assignments are overruled.

Assignments 19 and 20 allege error in giving instructions 6 and 7 because they were printed forms when all other instructions were typewritten. It is stated that "a printed form would convey to the jury the impression that said matters contained therein are unimportant and need not be given the same weight as the other instructions." No such objection was made at the trial and we have nothing before us but the statement in the motion for new trial, which does not prove itself. However, we ruled a similar contention in State v. Burlison, 315 Mo. 232, 285 S.W. 712, 716, as follows: "It is intimated by appellants, but not shown by the record, that some of the instructions were printed and some of them typewritten, and that thus undue emphasis was given to the typewritten instructions. Even if such was the fact, we are unable to understand how appellants could have been prejudiced thereby. There are certain formal instructions which take the same form in every case wherein it is proper or necessary to give them. No good reason appears why instructions of that character may not very properly be printed or hectographed to save time in their preparation and to reduce the possibility of omitting important features in them in the hurry attending the preparation of such instructions separately for each trial." Instruction 6 stated in several paragraphs the presumption of innocence and the burden of the state to establish the guilt of defendant beyond a reasonable doubt. Its final paragraph concerned credibility of witnesses. Instruction 7 told the jury that remarks of counsel were not to be considered as evidence and that all testimony to which the court had sustained objections should be disregarded. Instruction 6 in the paragraph on credibility of witnesses told the jury they could take into consideration the witnesses' "relation to or feelings toward the defendant *or toward any witness who has testified before you during this trial.*" The motion for new trial states this italicized portion was added in longhand and says this improperly called the jurors' attention to it. (This likewise is not shown by the record.) It is also stated that this clause was unclear, uncertain and confusing. We do not think these are reasonable contentions (see State v. Kelly, 73 Mo. 608) but in any event, since all the witnesses were State's witnesses (defendant offering no evidence), we do not see how it could have been prejudicial to defendant. The final assignment as to instructions is that instruction 3 told the jury if they believed prosecutrix "had reasonable ground to fear physical injury, and that her will to resist was overcome by such fear" this could be taken into consideration "among the circumstances relating

to her resistance." Error is alleged for the reason that the term "reasonable ground" is not defined and it is said this gave the jury a roving commission with no guide. However, these are not technical words and should be understood by all people of ordinary intelligence; defendant asked no instruction defining this term or for clarification of instruction 3, which we do not find erroneous. See State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016; State v. Wood, Mo.Sup., 266 S.W.2d 632, 637; State v. Shriver, Mo.Sup., 275 S.W.2d 304, 309. The assignments concerning the instructions are overruled.

■ The two remaining assignments (16 and 17) relate to refusal to grant a new trial on the ground of newly discovered evidence. In State v. Brotherton, Mo. Sup., 266 S.W.2d 712, 718, we set out the requirements for granting a new trial on this ground, quoting from State v. Speritus, 191 Mo. 24, 41, 90 S.W. 459, 464, as follows: "First, that the evidence first came to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner; third, that it was so material that it would probably produce a different result if the new trial was granted; fourth, that it was not merely cumulative; fifth, that the object of the testimony was not merely to impeach the character or credit of a witness; sixth, the affidavit of the witness himself should be produced, or its absence accounted for." Defendant did not meet these requirements. There was no showing that the evidence, claimed to have been discovered, came to defendant's knowledge after the trial or that it was not owing to the want of due diligence on his part that it did not come sooner. In fact, the record affirmatively shows the contrary. The motion named three persons who were said to have seen defendant between 11:30 P. M. and 12:30 A. M. on the night prosecutrix was attacked. The court held a hearing on the motion and two of these persons testified. There was no affidavit produced from the third and there was no accounting for its absence. One of these witnesses was the man identified by prosecutrix as defendant's companion in the car (defendant's brother-in-law) who she said also attacked her. Certainly defendant had every opportunity to know what his testimony would be (they claimed to have been together from 7:15 P. M. until after 12:30 A. M.) and he said he was at the courthouse on the day of the trial. The other witness who testified at the hearing was a tavern owner who said defendant and his brother-in-law came to his tavern "eleven or eleven-thirty" but "he couldn't state exactly what time it was" but did not think it was later than eleven-thirty. (On cross-examination he said he did not look at the clock and his estimate of the time was a guess.) He also said they both came back about a week after they were arrested and asked him "to verify them being in there." Thus his testimony showed defendant knew what his testimony would be and had ample opportunity to use him as a witness if he so desired. Two other alleged witnesses, not named, and whose testimony would have been merely cumulative of those named, were said to have seen defendant at another tavern at a later time (between 11:30 and 12:30) after they had left the first one; and no showing of due diligence was made as to why they could not have been produced at the trial. We, therefore, hold that the trial court properly overruled the motion for new trial.

We have examined the record and find no error respecting the sufficiency of the information, verdict, judgment and sentence. The record does not show arraignment or plea but does show that defendant was tried as if he had been arraigned and entered a plea of not guilty. See Rule 25.04; State v. Newstead, Mo.Sup., 280 S.W.2d 6, 8; State v. Schramm, Mo.Sup., 275 S.W.2d 343, 344. We find defendant had a fair trial without reversible error.

The judgment is affirmed.

All concur.